# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ETTI BEN-ISSASCHAR** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **ELI AMERICAN FRIENDS OF THE** | : | **NO. 15-6441** |
| **ISRAEL ASSOCIATION FOR CHILD** | : | |
| **PROTECTION, INC., et al.** | : | |

## MEMORANDUM

**JONES, J.**                                                                             **JANUARY    , 2016**

      Plaintiff Etti Ben-Issaschar, an Israeli resident, brings this civil action against ELI American Friends of the Israel Association for Child Protection, Inc. ("ELI"), Daphne Barak Erez, and Michal Barak Nevo, asserting claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") and "common law." The factual basis for the complaint is substantially similar to two complaints previously filed by Etti's father, Yaakov Ben-Issaschar, both of which were dismissed.[1] Etti also filed a motion to proceed *in forma pauperis*. For the following reasons, the Court will grant Etti leave to proceed *in forma pauperis* and dismiss her complaint.

## I.    FACTS AND PROCEDURAL HISTORY

      In April of 2013, Yaakov filed a RICO action against ELI, two Israelis on the board of ELI, and three Israeli judges. *See Ben Issaschar v. Zimrin*, E.D. Pa. Civ. A. No. 13-2415. His claims stemmed from a custody battle that took place in the Israeli courts in 2005, which resulted in the removal of Etti from his care and her placement at an ELI shelter. As the basis for his RICO claims, Yaakov essentially alleged that ELI and other defendants engaged in unlicensed,

---

[1] As Etti and her father share a surname, the Court will refer to them by their first names for ease of reference.

1

deceptive fundraising efforts in the United States and used the money they raised to exert influence over child custody cases in the Israeli courts, including his case, and to retaliate against individuals, such as himself, who protested ELI's activities. He also alleged that the defendants were essentially biased against men, and were responsible for "kidnapping" Etti and detaining her at a facility operated by ELI, and attempting to "silence" him for speaking out against ELI.

This Court dismissed Yaakov's claims against the Israeli judges and another defendant for lack of personal jurisdiction, as there was no indication that those defendants were ever present in Pennsylvania and as Yaakov's claims arose out of their activities in Israel, as opposed to any activities or contacts in Pennsylvania. As to the remaining defendants, the Court dismissed Yaakov's RICO claims with prejudice because he failed to allege the type of harm to "business or his property" that is cognizable under RICO, and because ELI's fundraising conduct was not the proximate cause of his harm. *Ben Issaschar v. ELI Am. Friends of Israel Ass'n for Child Protection, Inc.*, Civ. A. No. 13-2415, 2014 WL716986, at *5 (E.D. Pa. Feb. 25, 2014). Although Yaakov appealed the dismissal of his complaint, his appeal was ultimately dismissed for failure to prosecute after he failed to file a brief and appendix as directed by the Third Circuit. *Ben Issaschar v. Zimrin*, 3d Cir. No. 14-2824.

On September 25, 2014, while his appeal was pending, Yaakov instituted a second action against ELI asserting RICO claims and "common law tort" claims. *See Ben Issaschar v. ELI Am. Friend of the Israel Ass'n for Child Protection, Inc.*, E.D. Pa. Civ. A. No. 14-5527. The complaint named four new defendants—Asher Grunis, Edna Arbel, Daphne Barak Erez, and Michal Barak Nevo—and added Etti as a plaintiff. Yaakov again alleged that ELI engaged in racketeering activity by soliciting funds in the United States under false pretenses for purposes of removing children from their fathers in Israel. He also claimed that the individual defendants—

judges in Israel who also serve on Israel's Committee for the Reputation of the Courts—maliciously prosecuted him by sentencing him to prison time in retaliation for filing the first lawsuit and attempting to have Etti released from the ELI shelter.

After granting Yaakov leave to proceed *in forma pauperis*, the Court dismissed claims brought on behalf of Etti without prejudice because Yaakov could not pursue those claims on behalf of his daughter. The Court then dismissed Yaakov's RICO claims for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because, as with his prior RICO claims, Yaakov sought to recover for personal injuries rather than injuries to business or property. Yaakov's common law claims were dismissed for lack of subject matter jurisdiction. He did not appeal.

On December 3, 2015, Etti filed the instant civil action against ELI and two of the defendants named in Yaakov's second lawsuit, Daphne Barak Erez and Michal Barak Nevo. The complaint is based on allegations that are essentially identical to those in Yaakov's complaints. Etti alleges that, in 2005, she was separated from her father and detained for eight months in a shelter run by ELI in Israel because the defendants hate men and sought to retaliate against Yaakov. She also alleges, as did her father, that ELI engages in deceptive fundraising practices for purposes of removing children from their fathers in Israel and detaining them in ELI facilities. Although Yaakov is not named as a plaintiff, Etti's complaint alleges that, among other things, the defendants had Yaakov falsely arrested and prosecuted for various crimes in Israel in retaliation for speaking out against them and filing his 2013 lawsuit.

The complaint asserts the following claims: (1) a "common law" claim for the "detention of Etti Ben Issaschar" at an ELI facility for eight months beginning in 2005, and subjecting her to "treatment" after removing her from her father's care; (2) a common law claim for "malicious infliction of emotional distress" stemming from Yaakov's prosecution and conviction, allegedly

3

in retaliation for Yaakov having spoken out against the defendants; (3) two RICO claims based on ELI's allegedly deceptive fundraising activities to induce donations for purposes of kidnapping children and detaining them at ELI facilities in Israel (including Etti), as well as retaliating against whistleblowers (such as Yaakov); and (4) a RICO conspiracy claim. The complaint seeks $5 million for Etti, $5 million for Yaakov (even though he is not identified as a plaintiff), and an injunction prohibiting ELI from fundraising in the United States.

## II. STANDARD OF REVIEW

The Court will grant Etti leave to proceed *in forma pauperis* because it appears that she is not capable of paying the fees and costs necessary to commence this civil action. As Etti is proceeding *in forma pauperis*, the Court must dismiss her complaint if it fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). To survive dismissal for failure to state a claim, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). As Etti is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. DISCUSSION

"[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted). Etti is the only plaintiff identified in the caption of the complaint in accordance with Federal Rule of Civil Procedure 10, and the only individual who signed the complaint in accordance with Federal Rule of Civil Procedure 11. Although the complaint does not name Yaakov as a plaintiff, the complaint repeatedly describes harm that he

4

suffered as a result of the defendants' conduct. In that regard, the complaint alleges that the defendants falsely arrested Yaakov, maliciously prosecuted him, retaliated against him, caused him emotional distress, and removed his daughter from his care. The complaint also seeks damages on Yaakov's behalf to compensate for those and possibly other injuries. However, Etti lacks standing to pursue claims based on harm suffered by her father, and may not use this complaint as a means of resurrecting her father's previously dismissed claims. Accordingly, the Court will dismiss all such claims for lack of standing.

Turning to Etti's RICO claims, those claims suffer from the same defects as Yaakov's previously-raised RICO claims. "To establish a RICO claim, a plaintiff must show (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiffs business or property." *Ben Issaschar*, Civ. A. No. 13-2415, 2014 WL716986, at *5 (quotations omitted). The type of harm suffered by Etti for which she seeks to recover in this action—i.e., harm related to her detention and the alleged abuse she suffered while detained—is not an injury to "business or property" that is cognizable under the RICO laws. *Id.*; *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) ("[I]n construing the federal RICO law, this Circuit has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'"). Etti's failure to state a substantive RICO claim is fatal to her RICO conspiracy claim. *Ben Issaschar*, Civ. A. No. 13-2415, 2014 WL716986, at *4 n.5 (citing *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 229 (3d Cir. 2007)); *see also Beck v. Prupis*, 529 U.S. 494, 507 (2000) ("[A] person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute.").

All that remains are Etti's common law claims based on her detention and the abuse she sustained at the shelter. However, the Court lacks jurisdiction over any such claims.[2] The only independent basis for jurisdiction over such claims is 28 U.S.C. § 1332(a). That provision grants a district court jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and is between:

> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

This case is between Etti, an Israeli citizen, on one side and two Israeli citizens and a Pennsylvania citizen on the other side. Given the presence of aliens on both the plaintiff's side and the defense side, this case does not fall under § 1332(a)(2). *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997) ("Cases between aliens on one side and aliens and citizens on the other[] . . . do not fit the jurisdictional pigeonhole [established by § 1332(a)(2)]."). Nor is this litigation between citizens of different states so as to satisfy § 1332(a)(3), because the only plaintiff, Etti, is not a citizen of any state. *See id.* at 497

---

[2] The Court will not exercise supplemental jurisdiction, having dismissed all federal claims.

6

(observing that § 1332(a)(3) "plainly requires that the dispute be between citizens of different states"). Accordingly, there is no basis for diversity jurisdiction here.[3]

In any event, assuming that Pennsylvania law applies to this dispute, Etti's tort claims are time-barred. Etti is in essence asserting claims for false imprisonment—and possibly assault and intentional infliction of emotional distress—in connection with her detention at an ELI shelter for eight months beginning in 2005.[4] *See* Compl. ¶¶ 52, 59, 64 & 68. Pennsylvania's statute of limitations for such torts is two years. *See* 42 Pa. Cons. Stat. § 5524. The statute of limitations began to run when Etti had a complete cause of action, that is, at the time she was released from the ELI facility in 2005 or 2006.[5] *See Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises.").

In Pennsylvania, if a cause of action accrues while an individual is an "unemancipated minor," the statute of limitations is tolled until the individual reaches eighteen years of age. 42 Pa. Cons. Stat. § 5533(b). As Etti was a minor at the time her claims accrued, the statute of limitation is tolled until she turned eighteen on November 12, 2012. *See* Compl. ¶ 61. She was therefore required to file her claims by November 12, 2014, unless another basis for tolling applies.

---

[3] Furthermore, it is doubtful that the Court has personal jurisdiction over the individual defendants based on their actions in Israel, as it appears Etti is attempting to base personal jurisdiction solely on the fact that her father filed an action in this forum. *See* Compl. ¶ 14.

[4] Although the complaint describes more recent events, all of those events concern the defendants' interactions with Yaakov, in particular, their alleged false arrest, false imprisonment, malicious prosecution, and retaliation against Yaakov. For reasons previously noted, Etti may not bring claims based on harm suffered by her father.

[5] The complaint alleges that Etti was detained for eight months at an ELI shelter, but is unclear as to whether she was released in October of 2005, or February of 2006. *Compare* Compl. ¶64 *with* Compl. ¶ 68.

The complaint suggests that the limitations period should be further tolled because Etti is "dependent on her father," Compl. ¶ 17, and because, although she turned eighteen more than two years ago, "she is still an un-emancipated minor living at her father's home in his custody and care." *Id.* ¶ 61. Etti's dependency on her father and/or the fact that she remains in his custody do not provide a basis for tolling under Pennsylvania law. Furthermore, as Etti has turned eighteen, she is not a "minor" for purposes of the tolling statute, regardless of how the complaint describes her. 42 Pa. Cons. Stat. § 5533(b)(1)((ii) ("As used in this paragraph, the term 'minor' shall mean any individual who has not yet attained 18 years of age."). Nor is any other basis for tolling apparent from the complaint. Etti was therefore required to file this action by November 12, 2014. As she did not file her complaint until December 3, 2015, more than two years after her claims accrued, her claims are time-barred.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the complaint. Etti will not be given leave to amend because the Court concludes that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). Any further attempts by Etti or Yaakov to litigate claims in this Court based on their issues with ELI, board members of ELI, or members of the Israeli judiciary may cause them to be subject to a pre-filing injunction. *See Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990) ("When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process."). An appropriate order follows, which shall be docketed separately.